# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No.  3:18-CR-158 |
| *Plaintiff*, | : | |
| v. | : | Judge Walter H. Rice |
| NASER ALMADAOJI, | | |
| *Defendant.* | : | |

## RESPONSE TO DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY AND REQUEST FOR *DAUBERT* HEARING

### I. INTRODUCTION

The government respectfully submits this response in opposition to Defendant's Motion to Exclude Expert Testimony and Request for *Daubert* Hearing.  Doc. 66, PageID# 450.  Dr. Vidino's testimony is reliable, relevant, and admissible.  Dr. Vidino has been qualified on these very topics, in this very Court, relatively recently.  Almadaoji is aware of this—the transcript of Dr. Vidino's testimony was produced in discovery.  Almadaoji is also likely aware that each of his "five reasons" for which Dr. Vidino should be excluded were considered, and almost entirely rejected, by another court in *United States v. Shafi*, Case No. 15-cr-00582, 2018 WL 3159769 (N.D. Cal. June 28, 2018).  Almadaoji's motion largely recounts, with Sixth Circuit rather than Ninth Circuit case law, the arguments advanced by the Defendant's Motion to Exclude Expert Testimony and Request for *Daubert* Hearing in the *Shafi* case.  Those arguments should fail here for all the same reasons articulated by the *Shafi* court in addition to the fact that Dr. Vidino has been previously qualified in this Court on these topics.

**II. Dr. Vidino's Expertise and Anticipated Testimony**

Dr. Lorenzo Vidino is the Director of the Program on Extremism at George Washington University. The Program on Extremism:

> [P]rovides analysis on issues related to violent and non-violent extremism. The Program spearheads innovative and thoughtful academic inquiry, producing empirical work that strengthens extremism research as a distinct field of study. The Program aims to develop pragmatic policy solutions that resonate with policymakers, civic leaders, and the general public.
> []
> The Program brings together a multidisciplinary team of experts from across the globe, including government officials with experience in public safety and law enforcement, scholars, former extremists, and counter-extremism practitioners providing first-hand assistance to families grappling with radicalization. This diverse team is led by Director Dr. Lorenzo Vidino and Deputy Director Seamus Hughes. Dr. Vidino is a leading expert on Islamism in Europe and North America, and a regular commentator on diverse media outlets.

*See* Program on Extremism, George Washington University, *available at* https://extremism.gwu.edu/about (last accessed Sep. 21, 2021). Dr. Vidino is the author of numerous publications on terrorism and specifically ISIS.

Dr. Vidino has testified in numerous federal criminal cases involving charges of material support of a foreign terrorist organization. *See, e.g.*, *United States v. Kareem*, 15-CR-0707-SRB, Trial Trans. March 9, 2016, Docket No. 365 (D. Ariz.); *United States v. Al Farekh*, 15-CR-00266-BMC, Trial Trans., September 20, 2017, Docket No. 168 (E.D.N.Y.); *United States v. Hendricks*, Trial Trans. March 9, 2018 (N.D. Ohio). Dr. Vidino has also testified recently in this jurisdiction before this Court, in the case of *United States v. Alebbini*. 17-CR-71, Trial Trans. November 20, 2018, Doc. 107, PageID# 1934 (S.D. Ohio).

Dr. Vidino's *curriculum vitae*, outlining his additional professional and academic experience, numerous publications, testimonies, and presentations was provided to Almadaoji on August 18, 2021. Also provided was a Rule 16 summary of Dr. Vidino's anticipated testimony.

2

An abbreviated copy of that letter (omitting the voluminous transcripts included in the original) is attached to this response. *See* Exhibit A. Subsequently, on September 13, 2021, the government provided a second letter to Almadaoji enclosing additional transcripts and publications regarding Dr. Vidino.

### III. LEGAL STANDARD

Federal Rule of Evidence 702 allows a qualified expert to testify "in the form of an opinion or otherwise" where: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. Expert testimony is admissible under Rule 702 if it is both relevant and reliable. See *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). The relevance standard for *Daubert* and expert testimony is no different than the relevance standard for lay evidence: Federal Rule of Evidence 401. *See id*. at 587. Rule 401 states that evidence is relevant where "it has any tendency to make a fact [of consequence] more or less probable than it would be without the evidence."

With respect to when expert testimony will assist the trier of fact, the advisory committee notes for Rule 702 "refer to the traditional common law rule that expert testimony is called for when the 'untrained layman' would be unable intelligently to determine 'the particular issue' in the absence of guidance from an expert." *United States v. Mejia*, 545 F.3d 179, 189 (2d Cir. 2008); *see also* Fed. R. Evid. 702 advisory committee notes ("There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the

particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.") (internal quotation marks omitted). Under the reliability requirement, the expert testimony must "have a reliable basis in the knowledge and experience of the relevant discipline." *Kumho Tire Co., Ltd. V. Carmichael*, 526 U.S. 137, 148-49 (1999). Where, as here, the expert testimony is of a social science nature, the task of the court is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id*. at 152

## IV. ARGUMENT

### A. The Government's Expert Notice Satisfies Federal Rule of Criminal Procedure 16.

Almadaoji asserts that he cannot adequately prepare for trial because he does not understand "the rough boundaries of what Dr. Vidino's opinion is and how he reached that opinion." Doc. 66, PageID# 455. Almadaoji specifically complains that Dr. Vidino will testify about "…how and where one joins these groups, including common routes and methods of travel, common features, traits and behaviors of those seeking to join, and common tactics and methods used to join" and that the government's notice does not provide an adequate explanation for the bases and reasons for those opinions. *Id*.

In support of this contention, Almadaoji relies on *United States v. White*, *United States v. Anderson-Bagshaw*, and *United States v. Duvall*. None of those opinions support Almadaoji's conclusion that the summary of Dr. Vidino's testimony is inadequate. *White* held that a one-paragraph summary of expert testimony about Medicare rules, regulations, and procedures was insufficient because simply mentioning that the testimony would be about "reasonable costs" and "related party" costs was essentially a list of general subject matter rather than a notice of

4

opinion. *See United States v. White*, 492 F.3d 380, 405-07 (6th Cir. 2007). *Anderson-Bagshaw* found a summary lacking where it stated that a doctor's testimony would "include opinions as to how these mental conditions effect [sic] the Defendant's medical conditions, and the Defendant's ability to respond to questions presented to her." *United States v. Anderson-Bagshaw*, 509 F.App'x 396, 410 (6th Cir. 2012). The *Anderson-Bagshaw* court was particularly frustrated by the generic proffer of "opinions" because it concluded that the entire point of the expert's testimony was the lack of specific intent from the defendant based on the defendant's ability to respond to questions. *See id*. Finally, *Duvall* took issue with a two-sentence expert notice which the court concluded was merely a list of topics. *See United States v. Duvall*, 272 F.3d 825, 828-29 (7th Cir. 2001).

  The disclosure provided to Almadaoji in this case is facially far more substantial than any in the cited cases. Here, the government's disclosure is a multi-page summary of the information about which Dr. Vidino will testify, and substantially similar to the disclosure the government made concerning Dr. Vidino's testimony in *United States v. Alebbini*. It informs Almadaoji that Dr. Vidino will explain the process by which an organization is designated as a foreign terrorist organization, that ISIS and ISIS Wilayat Khorasan (ISIS-K) engage in terrorist activity and terrorism, and that such knowledge is widely and commonly held. It explains that Dr. Vidino will testify concerning the tactics of various terrorist organizations. Dr. Vidino will explain that these tactics include using the internet to disseminate propaganda and communicate with individuals outside of ISIS-controlled territory to radicalize those individuals and facilitate foreign travel to ISIS-controlled territory. Based on that information, Dr. Vidino will testify as to the significance of other evidence introduced at trial—including evidence of Almadaoji's own

5

actions and statements. This is a fulsome disclosure not at all comparable to the insufficient disclosures of *White, Anderson-Bagshaw,* and *Duvall*.

The expert notice in this case is even more fulsome than the disclosure originally provided in *Shafi*, which that court largely accepted as sufficient. *See Shafi*, 2018 WL 3159769 at *4, and Letter of March 12, 2018, *United States v. Shafi*, Case No. 15-cr-00582, 2018 WL 3159769 (N.D. Cal. May 24, 2018), Doc. 206-1 (Rule 16 Expert Disclosure). The *Shafi* court ordered the government to supplement its disclosure only on the issue of the "paths of radicalization and travel" to ensure that the testimony would not venture into profiling. *See Shafi* 2018 WL 3159769 at *4. On this issue, the government's present disclosure is also more fulsome than the *Shafi* disclosure, noting that Dr. Vidino will discuss ISIS's use of internet communications to facilitate travel for foreign fighters to ISIS territory as well as use those same methods of communications to disseminate radical propaganda. Dr. Vidino will then testify, for example, about already-admitted evidence concerning Almadaoji's behaviors such as his possession of radical propaganda and his discussion concerning travel to ISIS-controlled territory.

At bottom, Almadaoji's claim that the government's notice is insufficient is an attempt to require the sort of "chapter-and-verse recitation" that Rule 16 simply does not require. *See United States v. Babichenko*, No. 1:18-cr-00258, 2021 WL 780902, at *5 (D. Idaho March 1, 2021) ("Rule 16(a)(1)(G) does not require a chapter-and-verse recitation of the expert's opinion, bases, and reasons."). The subject matter of, and bases and reasons for, Dr. Vidino's testimony is clearly expressed in the disclosure letter and the attached CV. His testimony is based on his expertise and knowledge in the subject area, not on scientific or technical methodology. Further, the government has provided Almadaoji with hundreds of pages of Dr. Vidino's previous

6

testimony and written materials to supplement its disclosure letter. *E.g.*, *United States v. Yoon*, 128 F.3d 515, 527 (7th Cir. 1997) (finding the government more than fulfilled its obligation to disclose information about its expert where, in addition to two disclosure letters, it provided a transcript of previous trial testimony). For these reasons, the expert notice provided in this matter with respect to Dr. Vidino is sufficient.

### B. Dr. Vidino's Testimony Will Be Helpful to the Jury

Almadaoji next complains that Dr. Vidino's testimony would not be helpful to the jury inasmuch as it "will not help the jury resolve the most salient legal issue in this case—whether Mr. Almadaoji attempted to provide material support to ISIS Wilayat Khorasan." Doc. 66, PageID# 458. However, this contention fundamentally misstates the test for relevant, admissible evidence. Nowhere in the Federal Rules of Evidence is expert testimony limited to "the most salient legal issue" in a case. Rather, as explained by the Supreme Court in *Daubert*, the relevance of expert testimony is evaluated under the normal standard of Rule 401. *See Daubert*, 509 U.S. at 587. Rule 401 states evidence is relevant where it makes *any* fact or consequence more or less relevant—not only the salient, or ultimate issue in the case. *See* Fed. R. Evid. 401.

In any event, Dr. Vidino's testimony will be helpful to the jury. Almadaoji takes issue with the government's disclosure that Dr. Vidino will discuss background evidence regarding the global jihadist movement and certain high-profile figures. But this sort of background evidence is undoubtedly useful to the jury in understanding the full story of the offense—for example, what ISIS and ISIS-K are and where they came from—and is certainly relevant to their evaluation of whether Almadaoji attempted to provide material support to those organizations. Indeed, the introduction of this very sort of background information through expert testimony is explicitly recognized as a "venerable practice" in the Advisory Committee Notes to the 2000

Amendments to Rule 702 ("The amendment does not alter the venerable practice of using expert testimony to educate the factfinder on general principles.").

Almadaoji additionally complains that "the government will not have to prove that ISIS Wilayat Khorasan is a violent, fundamentalist organization. Mr. Almadaoji stipulates that ISIS Wilayat Khorasan is a designated terrorist organization." Doc. 66, PageID# 458. This argument is a red herring that has been addressed in the government's response to Almadaoji's Motion *in limine* concerning testimony of violent acts perpetrated by ISIS. The government will not re-iterate the entirety of its arguments here, but rather incorporates that response by reference. The government will reiterate that Almadaoji's stipulation is facially different from the element he claims it satisfies and does not address the *other* evidentiary issues for which such testimony is relevant.

Even if the court required the government to accept Almadaoji's stipulation, the need for certain aspects of Dr. Vidino's testimony would *increase*, not vanish, because the government would need—at the very least—to elicit testimony from Dr. Vidino about *what* the list of designated terrorist organizations is, *how* organizations are placed on that list, and *why* they are placed on that list. Indeed, in such a situation, the government would be forced to rely almost entirely on Dr. Vidino to inform the jury about the moral underpinnings of the designated terrorist organizations list.

### C. Dr. Vidino's Testimony is Reliable

Almadaoji broadly attacks Dr. Vidino's work as unreliable and therefore impermissible as expert testimony. Doc. 66, PageID# 458-59. Notably absent from the defendant's attack is the fact that district courts around the country have repeatedly permitted Dr. Vidino to testify in criminal jury trials as an expert on the very topics he will testify about here—including this very

8

Court in the *Alebbini* case.  Defendant cannot seriously contend that numerous courts, including this one, have been universally and consistently incorrect in their own assessments of Dr. Vidino's reliability.  Even the *Shafi* court, ruling on the motion that was the template for Almadaoji's objections here, summarily dismissed this argument in a single paragraph.  *See Shafi*, 2018 WL 3159769 at *4.

Almadaoji's arguments boil down to an overly-strict emphasis on the factors enumerated by the *Daubert* court—an approach *Daubert* and *Kumho Tire* explicitly caution against.  *See Daubert*, 509 U.S. at 593 ("Many factors will bear on the inquiry, and we do not presume to set out a definitive checklist or test."), *and Kumho Tire*, 526 U.S. at 150 ("In other cases, the relevant reliability concerns may focus upon personal knowledge or experience…Our emphasis on the word 'may' thus reflects *Daubert's* description of the Rule 702 inquiry as a flexible one. *Daubert* makes clear that the factors it mentions do *not* constitute a definitive checklist or test.") (internal quotation marks and citations omitted).  As the Supreme Court stated in *Kuhmo Tire*, because "there are many different kinds of experts, and many different kinds of expertise . . . the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issues, the expert's particular expertise, and the subject of his testimony."  *Id.* (quotation marks omitted).

Almadaoji's preoccupation with "statistical significance" fails to recognize this point.  As an initial matter, the Supreme Court, outside the context of Rule 702, has rejected the idea that the reliable basis for an expert conclusion requires a statistically significant sample size.  *See Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 40-41 (2011) ("A lack of statistically significant data does not mean that medical experts have no reliable basis for inferring a causal link between a drug and adverse events…We note that courts frequently permit expert testimony

on causation based on evidence other than statistical significance."). Further, Almadaoji makes no efforts to describe *which parts* of Dr. Vidino's opinions he contends are invalid because they are based on "statistically insignificant" data. For example, the government anticipates that Dr. Vidino will testify about the history of ISIS and ISIS-K, their origins, and rise to prominence. This type of testimony is certainly of the sort contemplated by Rule 702, but it is difficult to imagine what "statistically significant data" such testimony would be based on.

Almadaoji repeats this criticism several times, summarily claiming that Dr. Vidino's "theories are just ideas" and that his testimony must be found inadmissible because *Daubert* "limits expert testimony to opinions derived from rigorous, testable science and social science that carry the traditional indicia of reliability, such as acceptance by peer-review and measurably low error rates." Doc. 66, PageID# 461. But even a cursory reading of *Daubert* and *Kumho Tire,* as noted above, reveal that those cases did no such thing. There are many types of expert testimony for which "error rates" are completely inapposite or impossible to contemplate. "ISIS and ISIS Wilayat Khorasan engage in terrorist activity;" "ISIS and ISIS Wilayat Khorasan have used social media, including YouTube, to disseminate propaganda;" and "specific vocabulary and imagery [are] used by ISIS and ISIS Wilayat Khorasan supporters" are all examples of testimony Dr. Vidino will provide that are certainly properly admissible as expert testimony, but are beyond the realm of "error rates." Defendant's entire motion is mired in a world where expert testimony encompasses only the opinions of engineers, mathematicians, and physicists—but the law has moved beyond that. *Cf. United States v. Amawi*, 695 F.3d 457, 478-79 (permitting expert testimony in a material support case about how terrorists use the internet to disseminate the videos, the difficulties encountered in obtaining the videos, the apparent

10

purposes in creating and distributing the videos, and how internet users may be able to locate and access such materials).

In any event, the defendant's complaints about Dr. Vidino's work are unfounded. A recent publication produced by Dr. Vidino's Program on Extremism entitled The Travelers is illustrative. The report was written by Dr. Vidino's deputy director and research director, as well as a research fellow, all of whom work under Dr. Vidino. Dr. Vidino, in his capacity as Director of the program, wrote an introductory note to the report. "Our latest report, The Travelers: American Jihadists in Syria and Iraq, provides a uniquely comprehensive analysis of the phenomenon of American foreign fighters in Syria and Iraq. Drawing on thousands of pages of documents and dozens of exclusive-access interviews (including with returning foreign fighters), the report describes a phenomenon that is bound to have enormous implications on the security environment for the coming years. As the nature of the threat evolves, the Program on Extremism is committed to continuing its effort to produce evidence-based and non-partisan analysis to support sound policymaking and public debate." *See* The Travelers: American Jihadists in Syria and Iraq at pg. vii, "A Note from the Director," available at https://extremism.gwu.edu/reports (last accessed September 21, 2021).

Oddly, Almadaoji also asserts that Dr. Vidino's testimony cannot possibly be applied to Almadaoji because Dr. Vidino has not met Almadaoji. Doc. 62, PageID# 462. Almadaoji cites absolutely no law for this proposition, and he does not explain to which aspects of Dr. Vidino's proffered testimony this novel complaint would apply. Even if expert testimony required some sort of personal knowledge concerning the defendant (which would, after all, make the expert witness a *fact witness* according to Federal Rule of Evidence 602), Almadaoji's specific complaint that he and Dr. Vidino have not *met* is yet another example of misdirection through

11

hyper-literal rhetoric. Dr. Vidino has had ample opportunity to "observe" Almadaoji's words and actions, and Dr. Vidino can apply his knowledge and experience in assisting the jury with interpreting Almadaoji's words and actions.

Dr. Vidino's testimony is reliable because it is based on his significant knowledge and experience in researching and writing about terrorist organizations and their members for years. *Kumho Tire* contemplates just such an expert. Almadaoji has utterly failed to describe why Dr. Vidino's research methodology fails to employ "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152.

### D. Dr. Vidino's Testimony is Not Inadmissible Character Evidence

The defendant repeatedly tries to characterize Dr. Vidino's testimony as impermissible "profile" testimony. It is not. Indeed, as the defendant points out in his motion, Dr. Vidino has on numerous occasions stated there is no real profile of a terrorist. For example, in a recent trial in the District of Arizona where a defendant was charged with attempting to provide material support to ISIS, Dr. Vidino testified on direct examination for the government that "there's no such thing as a common profile of ISIS support or ISIS sympathizers in the U.S. It really runs the gamut. You have teenage girls and 40-year-old-men. You have all kinds of socioeconomic backgrounds, all kinds of educational backgrounds, different patterns of radicalization, different recruiting patterns, so absolute diversity in profiles." *United States v. Kareem*, 15-CR-0707-SRB, Trial Trans. Pg. 8, March 9, 2016, Docket No. 365 (D. Ariz.). The *Kareem* transcript has been provided to Almadaoji. The government was well aware of these statements when it selected Dr. Vidino to be its expert, and it fully expects Dr. Vidino to testify similarly at this trial.

Nothing about this testimony precludes Dr. Vidino from testifying at Almadaoji's trial. Indeed, as described above, Dr. Vidino testified in Arizona that there is no standard profile of a

12

terrorist, then went on to analyze particular evidence that was at issue in that case, much as the government expects him to do here. *Id* at pp. 10-27. If anything, the defendant's "profile" argument leads to an impossible conundrum—he would object if Dr. Vidino were to testify that there is a standard profile of a terrorist, but now he also objects knowing that Dr. Vidino will likely testify that there is no profile of a terrorist. He cannot have it both ways. Particularly problematic is the defendant's argument that Dr. Vidino's testimony constitutes impermissible character evidence. This argument is based entirely on the mistaken assumption that Dr. Vidino would offer testimony about the profile of a terrorist, and that the defendant fits that profile. As discussed above, Dr. Vidino will offer no such profile testimony. Thus the defendant's argument about character evidence is meritless.

### E.  Dr. Vidino's Testimony Does Not Violate the Confrontation Clause

Next, Almadaoji incorrectly asserts that, because Dr. Vidino's testimony is based in part on legal documents, it is simply "repackaged testimonial hearsay" barred by the confrontation clause. *See* Doc. 66, PageID# 465.  As an initial matter, experts may rely on otherwise-inadmissible materials to form a basis for their testimony where "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." Fed. R. Evid. 703.  It is hard to imagine how an individual seeking to build an expertise or form an expert opinion on issues of terrorism (an illegal activity) could *avoid* reviewing legal documents as a part of their studies.  Indeed, it would seem deliberately obtuse for them to *ignore* a repository of information like that.  The *Shafi* court concurred that terrorism experts reasonably rely on these sorts of documents and that Dr. Vidino's testimony would not violate the conformation clause.  *See Shafi*, 2018 WL 3159769 at *5.

The Sixth Circuit addressed this question squarely in *United States v. Rios*: "When an expert's understanding of the inner workings of a criminal organization stems in significant part from such activities [interrogation of suspects and cooperating witnesses], courts have agreed that it is the process of amalgamating the potentially testimonial statements to inform an expert opinion that separates an admissible opinion from an inadmissible transmission of testimonial statements." 830 F.3d 403, 418 (6th Cir. 2016). Even Almadaoji concedes that this is exactly what Dr. Vidino does. *See* Doc. 66, PageID# 465 (citing Dr. Vidino's report *ISIS in America*, and quoting "our researchers reviewed more than 7,000 pages of legal documents detailing ISIS-related legal proceedings…"). While Almadaoji states that Dr. Vidino will be "little more than a conduit" for testimonial hearsay, his own description of Dr. Vidino's work belies that attack. Thus, Dr. Vidino's testimony will not run afoul of the specific concern identified by *Rios*, that the testimony will simply "use [the] expert to transmit particular testimonial statements, or their specific substance, to the jury." *Rios*, 830 F.3d at 418.

### F. Dr. Vidino's Testimony Does not Violate Federal Rule of Evidence 403.

Almadaoji's initial Rule 403 objection to Dr. Vidino's testimony is a repeat of his arguments in his motion *in limine* to exclude testimony of violent acts by *all witnesses*, including Dr. Vidino. The government will not readdress all the reasons for why this objection is incorrect here, and the government respectfully incorporates its response on that topic by reference.

The defendant, for the first time, shockingly suggests that Dr. Vidino be prevented from testifying about ISIS and ISIS-K *at all*. *See* Doc. 66, PageID# 466 ("Permitting Dr. Vidino to testify about ISIS and ISIS Wilayat Khorasan will prejudice the jury against Mr. Almadaoji."). This assertion is facially untenable. The nature and existence of ISIS is *an element of the offense* about which the government must obviously be allowed to present evidence.

In support of this extreme legal position, Almadaoji cites to Ninth Circuit and Sixth Circuit caselaw referencing gang-affiliation evidence and "guilt by association." *See id*. It is hard to image more inapposite caselaw. The government is not attempting to suggest that Almadaoji is associated with ISIS or ISIS-K in order to convict him of some other crime (as was the concern in the cases Almadaoji cites). Rather, Almadaoji's association with ISIS and ISIS-K—and his attempt to provide support to those organizations—*is* the crime.

Finally, Almadaoji contends that Dr. Vidino's testimony likely will confuse the jury because a piece of Dr. Vidino's academic work uses the European Union's definition of terrorism as opposed to the definitions of terrorism found in the U.S. code. Doc. 66, PageID# 466-67. Almadaoji then grossly chides that the United States federal definitions of terrorism lacks religious specificity—going so far as to imply that the government's, and Dr. Vidino's motives, are rooted in inspiring Islamophobia in the jurors. *See id*. This argument is entirely without merit. First, Defendant blatantly mischaracterizes Dr. Vidino's piece. Dr. Vidino does not define terrorism with a religious component at all. Rather, Dr. Vidino states:

> Definitions of terrorism at the national and international level are divergent, depending on the context, purpose and actor defining the term. For the purpose of this report, terrorism is interpreted as a deliberate act of violence against persons, committed by one or more individuals motivated by a violent ideology, with the intention to coerce, intimidate or convey some other message to an audience larger than the immediate victims.

Vidino, *Fear Thy Neighbor* at 38. As such, not only does Dr. Vidino acknowledge that different national entities define terrorism differently—presenting academic challenges in compiling data—but his amalgamated definition includes *no mention* of Islam. Indeed, this definition is *on the same page* of Dr. Vidino's report to which Almadaoji cites. When Dr. Vidino *does* mention Islam later in that passage, he does so in order to explain the focus of *this particular report*, the full title of which is, tellingly, "Fear Thy Neighbor: Radicalization and Jihadist Attack in the

15

West." *See id*. at 1. Dr. Vidino explains that "[t]his report specifically focuses on individuals or groups that are motivated by jihadist ideology…organisations that evoke their very particular interpretation of Islam to justify their actions." *See id*. at 38. As such, Dr. Vidino's reference to Islam denotes a *specific type* of terrorist that *this specific report* is evaluating, not a phobia-baiting assertion that all terrorism is Islamic in nature.

Dr. Vidino's testimony creates no risk that the jury will be confused about the definition of terrorism and its lack of a religious litmus-test. Only by obviously misconstruing a single line from a 108-page report does Almadaoji even raise the specter of that issue—a specter exorcised simply be reading the beginning of the paragraph Almadaoji himself cites, but tellingly omits.

### G. A *Daubert* Hearing is not Warranted

A review of the case law after *Daubert* shows that the rejection of expert testimony is the exception, not the rule. *See* Advisory Committee Notes to Fed. R. Evid. 702. Specific to the type of testimony at issue here, courts have repeatedly approved the admission of expert testimony regarding terrorist organizations and terrorist activities. A district court, moreover, is not required to hold a *Daubert* hearing before admitting such testimony. *E.g.*, *United States v. Reynolds*, 626 F. App'x 610, 614 (6th Cir. 2015) (citing Clay v. Ford Motor Company, 215 F.3d 663, 667 (6th Cir. 2000)). Nor is the trial court's role as gatekeeper intended to serve as a replacement for the adversary system. As *Daubert* clarified, "[v]igorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. 596. Thus, any challenge to the testimony of Dr. Vidino is better suited to cross-examination at trial and closing argument. Accordingly, defendant's request for a *Daubert* hearing should be denied.

16

## V. CONCLUSION

For all the reasons outlined above, the anticipated testimony of Dr. Lorenzo Vidino should be permitted because it would be helpful to the jury, is reliable, and is not unfairly prejudicial. Moreover, there is no need for the Court to conduct a *Daubert* hearing in this matter.

Respectfully submitted,

VIPAL J. PATEL
Acting United States Attorney


s/Nicholas Dingeldein
NICHOLAS DINGELDEIN (NY 5284674)
DOMINICK S. GERACE (OH 0082823)
Assistant United States Attorneys
JUSTIN SHER
Trial Attorney
200 West Second Street, Suite 600
Dayton, OH 45402
(937) 225-2910
Nicholas.dingeldein@usdoj.gov
Dominick.S.Gerace@usdoj.gov
Justin.Sher@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served this 24th day of September, 2021, on defense counsel via the Court's ECF system.

                                            s/Nicholas Dingeldein
                                            NICHOALS DINGELDEIN
                                            Assistant United States Attorney